UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE JAMES ELLIS,                                    Case No. 17-13852

       Plaintiff                                    Laurie J. Michelson
v.                                                               United States District Judge

PROSPECT AIRPORT                                    Stephanie Dawkins Davis
SERVICES, *et al.*,                                       United States Magistrate Judge

      Defendants.
_____/

**REPORT AND RECOMMENTION
MOTIONS TO DISMISS (Dkt. 17, 20) and MOTION
FOR LEAVE TO AMEND THE COMPLAINT (Dkt. 30)**

## I.    PROCEDURAL HISTORY

*Pro se* plaintiff, Willie Ellis, filed this lawsuit asserting that Prospect Airport

Services (Prospect) and MacArthur, MacArthur & Associates (MMA) violated

federal laws protecting his civil rights.  (Dkt. 1).  Shortly thereafter, he filed a "1st

Amended Complaint" that did not mention Prospect or MMA and added several

additional defendants.  (Dkt. 1).  The Court gave Ellis the opportunity to file a

second amended complaint to "set out in one place all the allegations that form the

basis of this lawsuit and, to the extent possible, separately state each defendant's

wrongdoing."  (Dkt. 8, Pg ID 20).  The Court further stated, "[i]f Ellis chooses not

to file a Second Amended Complaint by January 15, 2018, he must at least advise

the Court by that date, in writing, as to whether he intended the '1st Amended

Complaint' as a substitute for or supplement to his Complaint." (Dkt. 8, Pg ID 20). Ellis asked for an extension of the January 15 date and the Court gave Ellis until March 2, 2018. (Dkt. 10, Pg ID 24). The Court further stated, "If a Second Amended Complaint is not filed by March 2, 2018, the Court will proceed under the assumption that the '1st Amended Complaint' (R. 4) is a supplement to the Complaint (R. 1) and the case will proceed under that assumption." (Dkt. 10, Pg ID 24). On April 13, 2018, the Court issued an order screening the complaint and ordering service on only two defendants, Prospect and MMA and dismissing all other defendants. (Dkt. 11). The Court also noted its intention to treat the 1st Amended Complaint as a supplement to the original complaint. (Dkt. 11, Pg ID 26).

Prospect and MMA have filed separate motions to dismiss the complaint for failure to state a claim on which relief may be granted. (Dkt. 17, 20). MMA has moved in the alternative for summary judgment. (Dkt. 20). Plaintiff has filed a combined response to these motions. (Dkt. 26). Prospect and MMA filed replies in support of their motions. (Dkt. 27, 29). Well after the motions to dismiss were filed, Ellis filed a motion for leave to amend the complaint, which both defendants have opposed. (Dkt. 30-33).

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions to dismiss be **GRANTED** and that plaintiff's motion for leave to amend the complaint be **DENIED**.

## II.   FACTUAL BACKGROUND

As taken from the Court's April 13, 2018 Order, the initial complaint contains the following allegations.  Ellis began working for Prospect in October 2015.  (Dkt. 1, Pg ID 4).  When he was hired, Ellis told Prospect about his disability from his prior employment with non-party Huntley U.S.A. Security.  (Dkt. 1, Pg ID 1).  Ellis accepted a truck-driver job with Prospect that was within his physical limitations.  *Id*.  But after three months, Prospect started treating Ellis differently and, knowing he could not perform it, transferred Ellis to a manual-labor job.  *Id*.  This was at the behest of MMA, attorneys involved in one of Ellis' earlier cases.  *Id*.  Ellis allegedly ended up getting injured performing the manual-labor job.  (Dkt. 1, Pg ID 1-2).

In August 2017, Ellis filed a charge with the Equal Employment Opportunity Commission.  (Dkt. 1, Pg ID 4).  That charge states that Ellis had filed a June 2016 EEOC charge against Prospect and then resigned as part of a settlement.  *Id*.  But Ellis was denied unemployment in June 2017.  *Id*.  The August 2017 charge concludes by asserting that Prospect retaliated for the June 2016 charge and that Prospect discriminated against Ellis because of his race (African

American), his age (72), and his disability.  *Id*.  In the "Cause of Action" section of his civil cover sheet, Ellis lists Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and a denial of access to courts.  (Dkt. 1, Pg ID 7).

Again, taken from the Court's April 13, 2018 Order, following are the allegations contained in the 1st Amended Complaint.  (Dkt. 4).  In 2012, Ellis was pursuing a workers' compensation case.  (Dkt. 4, Pg ID 12).  At or around that time, he was working for Metro Airport and Huntley U.S.A. Security.  (Dkt. 4, Pg ID 13).  Sentry Insurance Company insured Metro, Huntley, or both.  *Id*.  Ellis retained an attorney for the workers' compensation case who said he was James Bilikki.  (Dkt. 4, Pg ID 12).  It appears that Bilikki worked at the firm Gallotta and Associates.  *Id*.  When Ellis arrived at a hearing for the workers' compensation case, a different person stated that he was James Bilikki.  *Id*.

The workers' compensation case did not move forward because "CMS" would not respond.  *Id*.  This prompted Ellis to contact CMS himself.  *Id*.  At the next hearing in the workers' compensation case, Magistrate Joy Turner and Bilikki were upset with Ellis.  *Id*.  Ellis says that Bilikki took him into a conference room where Bilikki "told [Ellis] he would give [Ellis] $3,000" for the case.  *Id*.  Ellis declined and told Magistrate Turner that he did not think Bilikki was bargaining in good faith and that he did not want Bilikki to continue to represent him.  *Id*.

4

Magistrate Turner told Ellis that Bilikki was a good lawyer and would stay on the case. *Id.* Another six months passed, and Bilikki told Ellis that "he would buy [Ellis'] case for 4,000." *Id.* Ellis again declined. *Id.* This apparently prompted Bilikki to seek withdrawal, which Magistrate Turner permitted. (Dkt. 4, Pg ID 13). Magistrate Turner said that if Ellis did not obtain a lawyer in 60 days, his case would be dismissed. *Id.* Ellis says that this "all came after them harassing me for three years." (Dkt. 4, Pg ID 13).

As explained above, all defendants except Prospect and MMA were dismissed from this matter by the Court. (Dkt. 11).

## III.   ANALYSIS AND CONCLUSION

### A.   <u>Standard of Review</u>

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting,

*Twombly,* 550 U.S. at 555 (citations and internal quotation marks omitted).  And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Id.,* quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Thus, it is permissible to consider, in the context of a motion to dismiss, documents are referenced in plaintiffs' complaint and are central to their claims.  *Allen v. International Truck & Engine Corp.*, 2010 WL 749655, *2 (S.D. Ohio 2010); *see also Havenick v. Network Exp., Inc.*, 981 F.Supp. 480 (E.D. Mich. 1997) ("[T]he Court may properly consider, for the purposes of a Motion under Fed.R.Civ.P. 12(b)(6), the entirety of documents which Plaintiffs rely upon and quote in their Complaint without transforming the

Motion into one for Summary Judgment."); *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (when "a document is referred to in the complaint and is central to the plaintiff's claim ..., the defendant may submit an authentic copy to the court to be considered on a motion to dismiss."); *Crofton v. Bank of America Home Loans*, 2011 WL 1298747, *3 (E.D. Mich. 2011) (A court may also consider "matters of public record," such as documents recorded with the Register of Deeds when considering a motion to dismiss under Rule 12(b)(6)).

> B.    <u>Claims Barred by Settlement and Release</u>

Prospect and MMA point out that, according to the settlement agreement Ellis signed, he resigned his position on November 1, 2016.  And, pursuant to the Settlement Agreement and Release signed by Ellis and Prospect, (Dkt. 17-2, Ex. 1), Ellis agreed to release all claims he had against Prospect and MMA that arose during his employment and up to the time of his resignation.  Ellis concedes that any claims arising from events that occurred as of the date of the settlement agreement are barred as against Prospect.  He maintains that his claims against Prospect are based solely on events and circumstances occurring after the date of the settlement agreement.

As to MMA, however, Ellis argues that MMA was not a party to the settlement agreement and thus, it does not bar any pre-agreement claims.  MMA maintains that it is a third-party beneficiary and thus any pre-agreement claims

were released by Ellis.  The Sixth Circuit holds that settlement agreements are

contracts governed by principles of state contract law.  N*eely v. Good Samaritan*

*Hospital*, 345 Fed. Appx. 39, 43 (6th Cir. 2009); *MLW Associates, Inc. v. Certified*

*Tool & Manufacturing Corp*., 106 Fed. Appx. 307, 312 (6th Cir. 2004).  When

interpreting a contract, "Michigan courts 'examine contractual language and give

the words their plain and ordinary meanings.'"  *Ordos City Hawtai Autobody Co.,*

*Ltd. v. Dimond Rigging Co., LLC*, 2017 WL 2471246, at *6 (6th Cir. June 8, 2017)

(quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp*., 511

F.3d 535, 544 (6th Cir. 2007)) (alterations omitted) (quoting *Coates v. Bastian*

*Bros., Inc.*, 276 Mich. App. 498 (2007)).  "If the language of the contract is

unambiguous, the court construes and enforces the contract as written."  *Id*.

(alterations omitted) (quoting *Quality Prod. & Concepts Co. v. Nagel Precision,*

*Inc*., 469 Mich. 362 (2003)).

The Settlement Agreement Ellis signed provides in pertinent part that Ellis

(Claimant):

> … hereby releases and forever discharges [PAS] **its …**
> **attorneys** … from any and all claims, of retaliation,
> discrimination, and/or harassment … which he has or
> might have, which are known or unknown, which arise
> directly or indirectly from events or circumstances
> existing as of the date if the Settlement Agreement.
> Claimant agrees that this provision is intended as a
> complete, full and final release of any and all claims he
> may have against the Released Parties and that no claims
> are reserved.

8

(Dkt. 17-2, Ex. 1; Dkt. 20-2, Ex. A) (emphasis added). The language of the release at issue here is similar to that in *Cochran v. Ernst & Young*, 758 F.Supp. 1548, 1558 (E.D. Mich. 1991) where the court concluded that even though the accounting firm was not a party to the agreement, the entity was expressly released in the settlement agreement and was therefore, entitled to dismissal of the lawsuit based on the express terms of the agreement. *Cochran* observed that, under Michigan law, courts use an objective standard to determine whether a party is a third-party beneficiary under the statute. *Id*. (citing *Frick v. Patrick*, 165 Mich. App. 689, 694 (1988)). Further, the agreement itself demonstrates the intentions of the parties. *Rieth–Riley Construction Co., Inc. v. Dept. of Transportation*, 136 Mich. App. 425, 430 (1984). In determining whether a party is a third-party beneficiary, the parties' motives and subjective intentions are irrelevant. *Guardian Depositors Corp v. Brown*, 290 Mich. 433 (1939).

Several cases suggest that it is immaterial that MMA is not party to the settlement agreement and that pre-agreement claims against it would be barred, regardless of the application of the Michigan third-party beneficiary statute. As explained in *Drive Logistics, LTD v. PBP Logistics LLC* under Michigan law, when a non-party to a contract invokes a contractual release that, by its terms, is broad enough to encompass the non-party, the third-party beneficiary inquiry is not necessary. 2016 WL 3913709, *9 n. 13 (E.D. Mich. July 20, 2016) (citing *Romska*

*v. Opper*, 234 Mich. App. 512 (1999); *Collucci v. Eklund*, 240 Mich. App. 654,

(2000) (citing the "well settled" principle of Michigan law that "the scope of a

release is governed by the intent of the parties as expressed in the release," and

rejecting the plaintiff's contention in that case "that the release does not apply to

his claims against [the] defendants because they were not parties to the execution

of the release and did not provide consideration for the release").  In the settlement

agreement, Ellis expressly released Prospect's attorneys, which is MMA.  Thus,

Ellis agreed to release all claims that existed as of the date of the settlement

agreement against MMA.

Even if application of the third-party beneficiary statute were required,

MMA satisfies those criteria.  As explained by the Michigan Supreme Court, "[a]

person is a third-party beneficiary of a contract only when that contract establishes

that a promisor has undertaken a promise directly to or for that person."

*Schmalfeldt v. North Pointe Insurance Co*., 469 Mich. 422 (2003).  The court

emphasized that a third-party beneficiary "may be a member of a class," so long as

this class is "sufficiently described" in the contract.  *Shay v. Aldrich*, 487 Mich.

648 (2010) (internal quotation marks and footnote with citation omitted).  Here,

MMA plainly falls within the class of Prospect's "attorneys" and thus, can be

characterized as a third-party beneficiary of the settlement agreement.  Hence, all

claims Ellis had against MMA existing as of the date of the settlement agreement, have been released.

     C.     <u>Post-employment Retaliation and Discrimination</u>

          1.     Discrimination

The complaint suggests that Ellis is making claims under Title VII, the ADEA, and the ADA for retaliation and discrimination against Prospect and MMA arising from their participation in the state unemployment proceedings, which ultimately resulted in Ellis being denied benefits by the Michigan Compensation Appellate Commission (MESC).  To the extent Ellis's complaint can be read to include a discrimination claim under any of the foregoing statutes, he has failed to state a claim.  As explained in *Rogers v. Makol*, 2014 WL 4494235, *4 (D. Conn. Sept. 10, 2014), an employer's opposition to an unemployment compensation claim is not an adverse employment action under Title VII or the ADA because those statutes forbid discrimination <u>during</u> the course of an employment relationship and are silent on actions taken after the end of the employment relationship.  *Id.* (citing 42 U.S.C. § 2000e–2(a) and 42 U.S.C. § 12112(a);[1] *Memnon v. Clifford Chance US, LLP*, 667 F.Supp.2d 334, 341 (S.D.N.Y. 2009) ("[T]here has been no adverse employment action taken against [plaintiff] because

---

[1]  The ADA contains a similar provision regarding prohibited employer practices.  *See* 29 U.S.C. § 623.

all of the conduct that gives rise to her allegations against [defendant] occurred after she resigned pursuant to the Settlement Agreement.")).  Moreover, a *prima facie* case of discrimination under any of these statutes requires an "adverse employment action."  As set forth above, any claims premised on the above statutes and arising from pre-release agreement conduct, were released as against both defendants.

Thus, the only possible discrimination about which Ellis can complain occurred after the employment relationship ended.  Yet, to prove a *prima facie* case of discrimination under each statute, a plaintiff must establish, among other things, that he or she suffered an "adverse employment action."  *See Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (Title VII); *Blizzard v. Marion Technical College*, 698 F.3d 275, 283 (6th Cir. 2012) (ADEA); *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (ADA).  An "[a]dverse employment action . . . 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Laster*, at 727 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (Under Title VII and the ADEA, an "adverse employment action" is some action by the employer that constitutes "a materially adverse change in the terms of her

employment."); *Myers v. Greene County Board of Ed.*, 2018 WL 6031329, at *10

(E.D. Tenn. Nov. 15, 2018) (Under the ADA, an adverse employment action is "a

materially adverse change in the terms and conditions of [a plaintiff's]

employment.") (quoting *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir.

2010)).  All claims that arose during the employment relationship were released

and any such alleged discrimination that occurred after the end of the parties'

employment relationship is not cognizable under Title VII, the ADA, or the

ADEA.  Consequently, Ellis's discrimination claim fails.

### 2.    Retaliation

The undersigned also concludes that Ellis's retaliation claims, under Title

VII, the ADA, and the ADEA fail to state a claim on which relief may be granted.

To establish a *prima facie* case of retaliation, a plaintiff must establish that: (1) he

engaged in a protected activity under Title VII; (2) his "exercise of such protected

activity was known by the defendant; (3) thereafter, the defendant took an action

that was 'materially adverse' to the plaintiff; and (4) a causal connection existed

between the protected activity and the materially adverse action."  *Rogers v. Henry

Ford Health Sys.*, 2018 WL 3629057, at *8 (6th Cir. July 31, 2018) (quoting *Laster

v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir.  2014)).[2]  "Protected activity"

---

[2] "Title VII analysis applies to ADA claims." *Cain v. Airborne Exp.*, 188 F.3d 506 n.2 (Table) (6th Cir. 1999); *see also Barrett v. Lucent Techs., Inc.*, 36 Fed. Appx. 835, 840 (6th Cir. 2002) ("Retaliation claims are treated the same whether brought under the ADA or Title VII....");

includes "opposition" to unlawful employment discrimination and "participation" in investigations or proceedings involving unlawful discrimination. *Skrine v. Barrett Paving Materials*, 2015 WL 5214636, *13 (E.D. Mich. Sep. 4, 2015).

However, the Supreme Court has cautioned that a plaintiff need not plead all the elements of the *McDonnell Douglas prima facie* case to survive a motion to dismiss. *White v. Adena Health System*, 2018 WL 3377087 (S.D. Ohio July 11, 2018) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement.").  Rather, "so long as a complaint provides an adequate factual basis for a Title VII discrimination claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *Id.* (citing *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012).  Moreover, *Swierkiewicz* remains good law after the Supreme Court's decisions in *Twombly* and *Iqbal*. *Id.* (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012)).

As recently explained in *Morningstar v. Circleville Fire & EMS Dep't*, 2018 WL 3721077, *8 (S.D. Ohio Aug. 6, 2018), while the Sixth Circuit has not spoken directly on this issue, several district courts within the Sixth Circuit have concluded that an employer's "mere opposition" to an unemployment benefits

_____

*Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (noting that "cases involving the ADEA and Title VII are instructive in cases involving the ADA").

claim does not constitute retaliation under Title VII or analogous state law.  *Id.*

(citing *Powell v. Honda of Am.*, 2008 WL 2872273, at *2 (S.D. Ohio July 22,

2008) ("[A] former employer's opposition to a request for unemployment benefits

is not, as a matter of law, actionable retaliatory misconduct."); *Kowalski v.

Kowalski Heat Treating, Co*., 920 F. Supp. 799, 805 (N.D. Ohio 1996) (explaining

that opposition to unemployment benefits is not the type of conduct that Ohio

lawmakers sought to prevent with anti-retaliation statutes because the state's own

administrative process allows employers to oppose unemployment benefits);

*Spencer v. CSL Plasma, Inc*., 2011 WL 4054715, at *7 (E.D. Ky. Mar. 8, 2017)

("[L]egitimate opposition to an unemployment compensation claim cannot be the

basis for a retaliation claim."); *Hatton v. United Parcel Serv*., 2006 WL 1895724,

at *3 (E.D. Ky. July 7, 2006) ("An employer may challenge a former employee's

application for unemployment benefits without running afoul of anti-retaliation

laws".).  Courts outside the Sixth Circuit have more specifically concluded that

applying for unemployment or participating in an unemployment compensation

hearing are not protected activities under Title VII.  *Hamilton v. New Horizons

Home Healthcare LLC*, 2018 WL 3633951, *4 (N.D. Ind. July 31, 2018) (citing

*Small v. WW Lodging, Inc.*, 106 Fed. Appx 505, 508 (7th Cir. 2004) (finding that

"applying for unemployment benefits is not activity protected under Title VII");

*McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th

Cir. 2011) (granting summary judgment where the plaintiff "fail[ed] to cite any authority recognizing an application for unemployment benefits, without more, as a form of protected activity under Title VII"); *Edwards v. Creeks Mental Health Servs., Inc*., 505 F. Supp. 2d 1080, 1093 (N.D. Okla. 2007) ("Here, plaintiff did not engage in protected opposition to discrimination; filing for unemployment compensation in [sic ] entirely unrelated to Title VII. Because plaintiff did not engage in a 'protected activity' under Title VII, defendant is entitled to summary judgment on plaintiff's retaliation claim.").  Thus, to the extent that Ellis's retaliation claims are based on his application for unemployment benefits or participation in the unemployment proceedings, he fails to state a claim.

Ellis's complaint suggests, however, that the protected conduct at issue is his 2016 EEOC complaint, which culminated in the parties' settlement agreement.  In his 2017 EEOC complaint, he asserts that he was denied unemployment benefits in retaliation for filing an EEOC discrimination charge and due to his race, age, and disability in violation of Title VII, the ADEA, and the ADA.  (Dkt. 1, Pg ID 4).  The adverse action required for a retaliation claim is "less burdensome than what a plaintiff must demonstrate for a Title VII discrimination claim."  *Rogers v. Henry Ford Health Sys*., 897 F.3d 763, 776 (6th Cir. 2018).  All the plaintiff must show is an action "that a reasonable employee" would have found materially adverse, "which in this context means it well might have dissuaded a reasonable worker

from making or supporting a charge of discrimination." *Id*. (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Notwithstanding *Morningstar* and other cases within this circuit cited above, there exists some case law that suggests an employer's opposition to an unemployment benefits claim can constitute "materially adverse" action sufficient to support a retaliation claim under certain circumstances. *Dougherty v. Bellevue School District*, 2012 WL 12874959 (W.D. Wash. June 15, 2012) (citing *Sherman v. Donahoe*, 2012 WL 503851, at *14 (W.D. Wash. Feb. 15, 2012) (finding that efforts to prevent a former employee from receiving benefits could constitute "retaliatory conduct" under Title VII and the ADA); *Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008) (emphasizing that interference with unemployment proceedings qualifies as retaliation).

However, consistent with case law cited above within the Sixth Circuit, there is a difference between "mere opposition" to an unemployment benefits claim (which is not retaliation) and the type of opposition that can constitute retaliatory conduct.  In *Sherman*, for example, the court found that the employer retaliated against the plaintiff due to its concerted "efforts to deny" the employee any unemployment benefits.  2012 WL 503851, at *13-14 (finding evidence of retaliation where there was a "fixation ... on ensuring that [the former employee] did not receive unemployment benefits").  In *Dougherty*, the court rejected the plaintiff's claim given the lack of evidence of any retaliatory efforts by the

defendant during the unemployment benefits hearing.  While *Dougherty* involved a motion for summary judgment, to survive a motion to dismiss, the complaint must still plausibly allege that Prospect's opposition to the unemployment benefits application was based on Ellis's filing of an EEOC complaint and not simply "mere opposition" to the unemployment benefits claim.  *See Rogers v. Makol*, at *4 ("[P]laintiff's complaint does not plausibly allege that the defendants' opposition to plaintiff's unemployment benefits was by reason of his filing a claim of discrimination.").

While Ellis's complaint alleges, in the 2017 EEOC charge, that Prospect opposed his application for unemployment benefits because of his 2016 EEOC charge, he makes no factual allegations to support this conclusory statement. Indeed, nothing in the complaint suggests that Prospect took actions like those in *Sherman* or *Dougherty*, to take this claim from "mere opposition" to unlawful retaliation.  Thus, in the view of the undersigned, Ellis has failed to state a retaliation claim under Title VII, the ADA, or the ADEA.

D.   Denial of Access to Courts

Ellis brings a vague claim of "denial of access to courts."  There is a constitutional right to access the courts, which is brought via 42 U.S.C. § 1983. *Beinlich v. Zehringer*, 2017 WL 749203, at *6 (S.D. Ohio Feb. 27, 2017) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (discussing the various

clauses of the Constitution under which the Supreme Court has found a right of free access to the courts).  "Denial of access to the courts claims may be 'forward-looking' or 'backward-looking.'"  *Id*. (quoting *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013)).  "Forward-looking" claims aim to eliminate "some 'frustrating condition' that stands between the plaintiff and 'the courthouse door.'"  *Flagg*, at 173 (citing *Christopher*, 536 U.S. at 413).  "In backward-looking claims ... the government is accused of barring the courthouse door by concealing or destroying evidence so that the plaintiff is unable to ever obtain an adequate remedy on the underlying claim."  *Id*.  Backward-looking claims typically involve allegations of a failed investigation or cover-up.  *Beinlich*, at *6 (citing *Swekel v. City of River Rouge*, 119 F.3d 1259, 1264 (6th Cir. 1997) ("Swekel alleges that the police covered-up proof against one of their own, destroyed critical evidence, and delayed Swekel's own investigation.")).

Critically, any viable denial of access to courts claim requires that defendants acted under color of state law.  Purely private conduct is not actionable under 42 U.S.C. § 1983.  *Brentwood v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (1989); *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (Section 1983 is not implicated by "merely private conduct, no matter how discriminatory or wrongful.").  Yet, under certain circumstances - for instance where a private actor jointly participates with a state in alleged constitutional

wrongdoing - the private actor is engaged in state action. *See e.g.*, *Dennis v. Sparks*, 449 U.S. 24 (1980). Ellis's complaint contains no allegations that any defendants are state actors or that they acted in concert with any state actors to deprive him of his access to courts. *See Perry v. Velsico Chemical Corp.*, 2013 WL 2393751, at *2 (E.D. Mich. May 31, 2013) (dismissing plaintiff's § 1983 complaint against corporate defendants because "the named defendants are private parties and not state actors subject to suit under § 1983."). In this case, defendants are private parties and there is no basis in the complaint for inferring that their conduct could be attributed to the State. *See Wellman v. PNC Bank*, 508 Fed. Appx. 440, 442 (6th Cir. 2012) (district court properly held bank was entitled to dismissal because it was not a state actor for purposes of § 1983); *see also Hughley v. Ocwen Loan Servicing, LLC*, 2013 WL 4782337, at *3 (N.D. Ohio Aug. 28, 2013) (dismissing plaintiff's § 1983 claim against Ocwen because it was not a state actor). Accordingly, Ellis fails to state a claim for denial of access to courts.

      E.    <u>Motion for Leave to Amend</u>

      1.    Legal Standards

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the

leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).   This court has held that "[a] party seeking to amend an answer must act with due diligence if it intends to take advantage of [Rule 15's] liberality." *Saginaw Chippewa Indian Tribe of Michigan v. Granholm*, 2008 WL 4808823, at *8 (E.D. Mich. Oct. 22, 2008) (Ludington, J.) (internal quotation omitted).   In *Perkins v. American Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001), the court listed several factors to consider when deciding whether to allow an amendment: "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."   The decision "as to when 'justice requires' an amendment is within the discretion of the trial judge...." *Loftis v. United Parcel Service, Inc.*, 342 F.3d 509, 513 (6th Cir. 2003) (quoting *Head v. Jellico Housing Authority*, 870 F.2d 1117, 1123 (6th Cir. 1989)).

For instance, a delay in time without prejudice is not enough to deny a motion to amend.   *Cook v. Field Packing Co., LLC*, 2006 WL 1523233, *2 (W.D. Ky. 2006) (citing *Duggins v. Steak'n Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)).   On the other hand, when a plaintiff possessed the information necessary to state a claim before the close of discovery but did not seek to amend his complaint until after discovery, courts have rejected a motion to amend.   *Id.*   Prejudice is

likely if an amendment involves new theories of recovery.  *Cook*, at *2 (citing *Bell*

*v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998)).  Prejudice is also likely

if an amendment would require significant additional discovery.  *Cook*, at *3

(citing *McKnight v. Kimberly Clark Corp*., 149 F.3d 1125, 1130 (10th Cir. 1998).

A defendant is significantly prejudiced when a plaintiff seeks to amend his

complaint after the close of discovery and the filing of dispositive motions.  *See*

*Duggins*, *supra*; *see also Tucker v. Union of Needletrades*, *Industrial and Textile*

*Employees*, 407 F.3d 784 (6th Cir. 2005).  In *Glomsky v. County of Oakland*, 2007

WL 1343634, *1 (E.D. Mich. 2007), seeking leave to amend one week prior to the

close of discovery and three weeks before the dispositive motion cut-off date was

considered undue delay.

A court may also deny leave to amend when the proposed amendment

would be futile.  *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir.

2003).  To determine whether an amendment would be futile, the court examines

whether the amendment could survive a motion to dismiss pursuant to Rule

12(b)(6).  *Keely v. Department of Veterans Affairs*, 2011 WL 824493, at *1 (E.D.

Mich. Mar. 3, 2011).

2.    Futility – Retaliation Against Prospect

In his proposed amended complaint, Ellis alleges retaliation claims against

Prospect under Title VII and the ADA.  As these claims were found subject to

dismissal above, the question here is whether the proposed amendments save

Ellis's retaliation claims.  In Counts I and II of the proposed amended complaint,

Ellis alleges that he engaged in protected activity by filing discrimination charges

against Prospect; that Prospect violated the anti-retaliation provisions of Title VII

and the ADA by providing false information to the Michigan Unemployment

Insurance Agency to prevent him from receiving unemployment benefits; that

Prospect retaliated against Ellis by informing the unemployment agency that he

had voluntarily quit; that Prospect did not have a lawful basis for opposing the

unemployment benefits claim because he did not voluntarily quit; and a reasonable

employee would have found the challenged action materially adverse.  (Dkt. 30, Pg

ID 269-270).

　　　While plaintiff's retaliation claims might be easier to follow in the proposed

amendment complaint, he has still not stated a claim.  As explained in *Hatton*,

*supra*, "[r]easonable legal positions, without more, do not constitute retaliation.  *Id.*

at *3 (citing *Roman v. Cornell Univ*., 53 F.Supp.2d 223, 245 (N.D.N.Y. 1999);

*Kowalski v. Kowalski Heat Treating, Co*., 920 F.Supp. 799, 805 (N.D. Ohio

1996)).  The *Hatton* court concluded that an employer does not retaliate by

informing a state agency that an employee was terminated for cause.  *Id*. at *3.

Similarly, Ellis admittedly signed a settlement agreement that expressly states he

voluntarily resigned and has stated several times in his pleadings that he

voluntarily resigned.  Even in the proposed amended complaint, Ellis admits that

he "resigned his employment as part of the settlement agreement."  (Dkt. 30, Pg ID

266, ¶ 10).  At worst, Prospect informed the unemployment agency that Ellis

voluntarily resigned.  Ellis admits the truth of this statement and the settlement

agreement supports his admission.  Thus, in the view of the undersigned, Ellis has

failed to state a claim for retaliation because Prospect, at worst, merely informed

the unemployment agency that he resigned, and this fact is supported by the

complaint and the proposed amended complaint.

Notwithstanding his admissions, Ellis also argues that he did not voluntarily

quit and that he was forced to resign, despite the settlement agreement and his

admissions.  However, Ellis's proposed amended complaint offers no factual

support for this claim and is conclusory in this regard.  Ellis primarily relies on

*Bowen v. Alpena Regional Medical Center*, 2018 WL 442218 (Mich. App. Jan. 16,

2018) to support his argument.  Ellis suggests, based on *Bowen*, that the mere fact

that he signed an agreement saying he voluntarily resigned is not the last word on

the subject.  Rather, according to Ellis, such an agreement is not conclusive.  In

*Bowen*, in the context of Elliott-Larsen Civil Rights Act and Whistleblower

Protection Act claims, the court analyzed the plaintiff's claim that he was

constructively discharged and made several observations about the plaintiff being

able to establish constructive discharge without necessarily showing duress, among

other observations.  *Id*. at *4.  *Bowen* did not, however, involve a retaliation claim or the opposition of unemployment benefits.  And, Ellis has not asserted that he was constructively discharged.  As the *Bowen* court explains,

> The doctrine of constructive discharge is a legal fiction created to determine whether a plaintiff's facially voluntary resignation was, in actuality, a result of the defendant's improper conduct such that the court will consider the resignation to be a de facto involuntary termination of the plaintiff's employment. Constructive discharge is not a cause of action in-and-of-itself; rather, constructive discharge is "a defense that a plaintiff interposes to preclude the defendant from claiming that the plaintiff voluntarily left employment." *Joliet v. Pitoniak*, 475 Mich. 30, 41; 715 N.W.2d 60 (2006). "A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Hammond United of Oakland, Inc.*, 193 Mich. App. 146, 151; 483 N.W.2d 652 (1992).

*Bowen*, at *3.  Ellis has not brought a wrongful termination claim or alleged intolerable working conditions and thus, the constructive discharge doctrine is simply inapplicable to the present dispute.  Accordingly, Ellis's attempt to apply principles of constructive discharge to his retaliation claim are unavailing and the proposed amended complaint does not save his retaliation claims.  The proposed amendment is, therefore, futile.

3.   Futility -  42 U.S.C. §§ 1983 and 1985 Claims Against MMA

In the proposed amended complaint, like the prior complaints, Ellis asserts claims against MMA arising from a worker's compensation claim that arose while

he was employed by Prospect.  As set forth above in detail, all claims against

Prospect and their attorneys (MMA) that existed before the date of the settlement

agreement, have been expressly released.  This includes any claims under § 1983

or § 1985.  Accordingly, Ellis's proposed amendments are all futile.[3]

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

defendants' motions to dismiss be **GRANTED** and that plaintiff's motion for leave

to amend the complaint be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

---

[3]  Given that the proposed amended complaint is entirely futile, the undersigned need not address defendants' arguments that Ellis's motion was untimely or unduly delayed.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 25, 2019                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 25, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and I have mailed by U. S. Postal Service to the following non-ECF participant: Willie James Ellis, 4020 Fox Creek E., Apt. 142, Clarkston, MI 48346.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov