UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| WILLIE JAMES ELLIS, | |
|---|---|
| Plaintiff, | Case No. 17-13852<br>Honorable Laurie J. Michelson |
| v. | Magistrate Judge Stephanie Dawkins Davis |
| PROSPECT AIRPORT SERVICES and MACARTHUR & MACARTHUR, | |
| Defendants. | |

**OPINION AND ORDER
ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [35],
GRANTING IN PART PROSPECT'S MOTION TO DISMISS [17],
GRANTING MACARTHUR & MACARTHUR'S MOTION TO DISMISS [20], AND
DENYING ELLIS' MOTION TO AMEND [30]**

Willie James Ellis used to work for Prospect Airport Services. He asserts that when he was hired by Prospect, he was given a job within his physical abilities. But within a few months, Prospect moved him to a job beyond those abilities. Ellis believes that Prospect made the move for discriminatory reasons and with input or direction from MacArthur & MacArthur, a law firm. Ellis filed a charge with the Equal Employment Opportunity Commission asserting discrimination. Prospect and Ellis settled that charge. After that, Ellis filed for unemployment benefits. But, says Ellis, Prospect was motivated to oppose his application for benefits because of the charge he had filed with the EEOC.

For these and other reasons, Ellis sued Prospect, MacArthur & MacArthur, and others. In an earlier opinion, the Court dismissed the others. Prospect and MacArthur & MacArthur now ask this Court to dismiss them. After briefing on the two motions to dismiss were complete, Ellis filed a motion to amend his complaint. The Court referred all pre-trial matters, including these three

motions, to Magistrate Judge Stephanie Dawkins Davis. She recommends dismissing Ellis' claims and denying Ellis' request to file an amended complaint. For the reasons that follow, the Court agrees with that recommendation.

# I.

## A.

Because Defendants moved under Rule 12(b)(6), the Court presents as fact the allegations of the operative pleadings, Ellis' *pro se* complaint and *pro se* "1st Amended Complaint." The following summary also borrows lightly from documents of record that are central to Ellis' claims. *See Klas Mgmt., LLC v. Chubb Custom Ins. Co.*, No. 2:17-CV-12663, 2018 WL 3159676, at *4 (E.D. Mich. June 28, 2018) (citing cases and discussing appropriate use of evidence in deciding a Rule 12(b)(6) motion).

In 2012, Ellis was working at an area airport for a company called Huntleigh USA. He was apparently injured on the job and thus filed a worker's compensation claim. Huntleigh, or the company's insurer, hired Defendant MacArthur & MacArthur, a law firm, to defend against Ellis' claim.

Ellis' complaint then skips ahead three years. In October 2015, Ellis was hired by Defendant Prospect Airport Services. (ECF No. 1, PageID.1.) When he was hired, Ellis told Prospect about his disability from his employment with Huntleigh. (*Id.*) Ellis started in a truck-driver job within his physical limitations. (*Id.*) But after three months, Prospect started treating Ellis differently and, knowing he could not perform it, transferred Ellis to a manual-labor job. (*Id.*) This was at the behest of MacArthur & MacArthur. (*Id.*)[1] Ellis says that "Randy MacArthur was

---

[1] Although not part of the complaint, MacArthur & MacArthur explains that when Ellis was injured while employed at Prospect, Ellis again filed for worker's compensation. And,

2

coaching them what to do." (ECF No. 1, PageID.2.) Ellis got injured performing the manual-labor job. (*See* ECF No. 1, PageID.1–2.)

In July 2016, Ellis filed the first of two EEOC charges against Prospect. Although the charge is not part of Ellis' complaint, the Court can glean that Ellis charged Prospect with discriminating based on one or more of his protected characteristics. (*See* ECF No. 1, PageID.5; ECF No. 17, PageID.76.)

On November 1, 2016, Ellis and Prospect settled that charge. (ECF No. 17, PageID.76–78.) Ellis received an undisclosed amount of money. (*See id.*) In exchange, Ellis agreed to "release[] and forever discharge[] . . . Prospect Airport Services, Inc. [and] its . . . attorneys . . . from any and all claims . . . which arise directly or indirectly from event or circumstances existing as of" November 1, 2016. (ECF No. 17, PageID.76.) Notably, however, the settlement agreement included an integration clause, and the integration clause carved out Ellis' worker's compensation claim: "This does not include Claimant's Worker's Disability Compensation claim." (ECF No. 17, PageID.77.) One other aspect of the settlement agreement is noteworthy: "[Prospect] agree[d] to change [Ellis'] personnel status from 'termination' to 'resignation.'" (*Id.*)

At some point, Ellis filed for unemployment benefits. In June 2017, Ellis "was denied unemployment benefits due to [his] resignation." (ECF No. 1, PageID.4.)

About two months later, in August 2017, Ellis filed a second EEOC charge against Prospect. (ECF No. 1, PageID.4.) In that charge, he claimed that he had "been denied unemployment benefits in retaliation for filing" the first charge against Prospect (i.e., the July 2016 charge that was settled in November 2016). (*Id.*) Ellis further alleged that he had been denied

---

according to MacArthur & MacArthur, like Huntleigh, Prospect (or Prospect's insurer) retained MacArthur & MacArthur to defend against the worker's compensation claim.

3

unemployment benefits on account of his age (72), race (African-American), and his disability (unspecified). (*Id.*)

In November 2017, Ellis filed this lawsuit. Because Ellis was proceeding without prepaying the filing fee, the Court screened Ellis' complaint. (ECF No. 11.) Via that screening, the Court dismissed all defendants except for Prospect and MacArthur & MacArthur. (*Id.*) The Court then referred all pretrial matters to Magistrate Judge Stephanie Dawkins Davis. (ECF No. 14.) A short while later, Prospect and MacArthur & MacArthur each filed a motion to dismiss. (ECF Nos. 17, 20.) After briefing on both motions was complete, Ellis moved to amend his complaint. (ECF No. 30.) The Magistrate Judge recommends granting both motions to dismiss and denying Ellis leave to amend his complaint. (ECF No. 35.)

Ellis objects. (ECF No. 41.)

**B.**

But it is not clear what Ellis objects to. His *pro se* objection does not cite any law and does not complain about any specific finding in the Magistrate Judge's report. (*See* ECF No. 41.) Arguably, Ellis' objections are insufficient to trigger review by this Court.

But insofar as the Magistrate Judge's report addressed the two motions to dismiss, the Court need not decide that issue. It has independently reviewed the report and recommendation and Prospect's and MacArthur & MacArthur's motions to dismiss, *see* 28 U.S.C. § 636(b)(1), and finds that Ellis has abandoned his discrimination claim based on the denial of unemployment benefits and that the operative pleadings (Ellis' complaint and "1st Amended Complaint") do not make it plausible that Defendants are liable, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**C.**

The Court begins with Ellis' claims against Prospect.

To the extent that Ellis claims that Prospect engaged in discriminatory or retaliatory conduct before the November 1, 2016, the Court finds that the settlement agreement's sweeping release bars any such claim against Prospect. (ECF No. 17, PageID.76.) This was well-explained by the Magistrate Judge (*see* ECF No. 35, PageID.420–424) and this Court need not elaborate further.

But given that Ellis attached his August 2017 EEOC charge to his complaint, it appears that Ellis also claims that Prospect retaliated and discriminated against him in the unemployment proceeding. To be more specific, in his August 2017 charge, Ellis stated that he had filed an EEOC charge against Prospect in July 2016, that he "resigned as part of a Settlement Agreement reached with" Prospect, that he was denied unemployment because of his "resignation," and that the denial of unemployment benefits was in retaliation for filing the July 2016 charge. (ECF No. 1, PageID.4.) The August 2017 charge also asserts that he was denied unemployment benefits based on his race, age, and disability. (*Id.*) Construing Ellis' *pro se* complaint liberally, he pleads that Prospect retaliated and discriminated against him during the unemployment proceeding in violation of Title VII, ADEA, and the ADA. And because the bulk (if not all) of the unemployment proceeding was after November 1, 2016, any claims premised on Prospect's conduct in that proceeding were not released in the settlement agreement.

Insofar as Ellis claims that Prospect's conduct during the unemployment proceeding was motivated by his race, age, or disability, the Court finds that Ellis has abandoned this claim. In its motion to dismiss, Prospect cited law suggesting that only employees—not former employees—may assert discrimination claims under Title VII or the ADA and that any role it had in denying Ellis unemployment benefits was not an adverse "employment" action. (ECF No. 17, PageID.68–69.) Despite help from the Federal Pro Se Legal Assistance Clinic, Ellis did not cite any law in

response. (*See generally* ECF No. 26.) Then, in her report and recommendation, the Magistrate Judge likewise cited law suggesting that a discrimination claim under Title VII, the ADA, and the AEDA requires a change in employment conditions—not post-employment conditions. (*See* ECF No. 35, PageID.425–426.) In his objections, Ellis cites no contrary law. (*See generally* ECF No. 41.) Moreover, Ellis (apparently with the aid of the pro se clinic) has filed a proposed amended complaint. (ECF No. 30.) That proposed complaint only claims that Prospect retaliated via the unemployment proceeding—not that Prospect discriminated. (*See* ECF No. 30, PageID.267–270.) So for all these reasons, the Court finds that Ellis has abandoned any claim that Prospect's conduct during the unemployment proceeding was based on his age, race, or disability.

That leaves Ellis' claim that because he filed the July 2016 EEOC charge against Prospect, Prospect opposed his application for unemployment benefits. The particulars of this retaliation claim, however, have been revised in Ellis' proposed amended complaint. So the Court will address this claim in deciding whether Ellis should be granted leave to amend.

**D.**

The Court thus turns to Ellis' claims against MacArthur & MacArthur.

Recall that in his complaint and "1st Amended Complaint," Ellis alleged that MacArthur & MacArthur directed or advised Prospect in early 2016 to move him from a job within his physical limits to a job beyond those limits. (ECF No. 1, PageID.1–2.) But the settlement agreement bars all Ellis' claims based on events prior to November 1, 2016—and, as the Magistrate Judge correctly explained, the release includes Prospects "attorneys." (*See* ECF No. 35, PageID.420–423.) So even if MacArthur & MacArthur directed Prospect to change Ellis' duties, Ellis released that claim against MacArthur & MacArthur when he settled his July 2016 EEOC charge.

6

**E.**

Ellis' complaint also makes a very brief reference to "violation of constitutional amendment preventing me from having fair access to the court." (ECF No. 1, PageID.7.) It is not clear whether this claim runs against Prospect, MacArthur & MacArthur, or one of the other defendants this Court has already dismissed. The Magistrate Judge found that Ellis' complaint and "1st Amended Complaint" do not make it plausible that Prospect or MacArthur & MacArthur acted "under color of state law" as that phrase is used in 42 U.S.C. § 1983. (ECF No. 35, PageID.431–433.) The Court agrees.

* * *

In sum, for the reasons stated in the Magistrate Judge's report and in this opinion, the Court finds that Ellis has abandoned his claim of discrimination based on the unemployment proceeding. As to the other claims in Ellis' complaint (ECF No. 1) and "1st Amended Complaint" (ECF No. 4), the Court finds that they do not plausibly show that Prospect or MacArthur & MacArthur are liable.

**II.**

With the operative complaint addressed, the Court turns to the question of whether Ellis should be granted leave to file an amended complaint.

**A.**

Sometimes magistrate judges issue orders on motions to amend. That is consistent with the statutory text. The Federal Magistrates Act lists motions that a magistrate judge may not decide (but instead offer a recommendation), and that list does not include motions to amend. *See* 28 U.S.C. § 636(b)(1). On the other hand, if a motion to add a claim is denied, the potential claim is

disposed of. So maybe a motion to amend should be considered dispositive. In any event, the Magistrate Judge in this case issued a report and recommends denying Ellis leave to amend.

As already discussed, Ellis has objected to the Magistrate Judge's report but it is extremely difficult to decipher which issues he would like this Court to independently decide. But the Magistrate Judge does recommend denying Ellis' motion to amend and Ellis has objected. And in all events, this Court may revisit issues even without objections. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985) ("[W]hile [§ 636] does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard."). The Court will thus make an independent decision on Ellis' motion to amend.

Rule 15 says that "when justice so requires," leave to amend a complaint should be "freely" granted. Fed. R. Civ. P. 15. But it also does not make sense to grant leave to add or amend a claim if the revised or new claim would simply be dismissed upon the defendant's motion. *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640 (6th Cir. 2018). So courts also do not grant leave when the claim is "futile," i.e., when the claim would not survive a motion to dismiss under Rule 12(b)(6). *See Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018).

**B.**

The Court begins with Ellis' proposed claims against Prospect.

Unlike his initial pleadings, Ellis' proposed amended complaint only asserts retaliation claims against Prospect. He alleges that after the settlement agreement, he applied for unemployment benefits. (ECF No. 30, PageID.266.) But Prospect informed Michigan's Unemployment Insurance Agency that he had voluntarily quit. (ECF No. 30, PageID.266.) And, under Michigan law, "an individual is disqualified from receiving benefits if he or she . . . [l]eft

work voluntarily without good cause attributable to the employer." Mich. Comp. Laws § 421.29(1)(a). Thus, says Ellis, "based on information furnished by Prospect, [the Unemployment Insurance Agency] denied benefits on the grounds that [I] had voluntarily quit [my] job." (ECF No. 30, PageID.266.) Yet, Ellis pleads, he "did not voluntarily quit" so what Prospect told the agency was "false." (*See* ECF No. 30, PageID.268.) Ellis thus asks this Court for leave to assert two nearly-identical retaliation claims against Prospect, one under Title VII and one under the ADA. (ECF No. 30, PageID.270.)

In an untimely and unsolicited filing, Ellis has provided the Court with some of the decisions in the unemployment proceeding. It appears that Ellis was denied benefits in February 2017 and, on redetermination, again in March 2017. At least the latter denial was under the voluntary-leave provision, § 421.29(1)(a). (*See* ECF No. 42, PageID.455.) Ellis then appealed and apparently introduced his August 2016 termination letter. (*See* ECF No. 42, PageID.458.) But it appears that he did not introduce the November 1, 2016 settlement agreement. (*See* ECF No. 42, PageID.458.) The administrative law judge reversed the earlier determinations and held that Ellis was "not disqualified from receiving benefits pursuant to the voluntary leaving provision, [§ 421.]29(1)(a)." (ECF No. 42, PageID.457.) Given that Ellis alleges that he was denied unemployment benefits in June 2017, and that he claims that this was due to Prospect's opposition, it appears that Prospect successfully appealed the administrative law judge's decision.

Given the foregoing, the Court can perhaps at once sharpen Ellis' claim and partly address Prospect's assertion of futility. Prospect makes much of the fact that Ellis stated in his EEOC charge and in his proposed amended complaint that he resigned. (ECF No. 31, PageID.294–295, 303, 306) And, Prospect points out, the settlement agreement says he resigned. (ECF No. 31, PageID.294, 295, 302.) So, in Prospect's view, Ellis "disqualified himself, *as a matter of law*, from

9

receiving any unemployment benefits." (ECF No. 31, PageID.306.) And says Prospect, because Ellis in fact resigned, it simply provided "truthful information to the UIA." (ECF No. 31, PageID.303.) But Ellis also pleads that he "did not voluntarily quit his employment with Prospect Airport Services" and that Prospect provided "false" information to the unemployment agency. (ECF No. 30, PageID.268, ¶¶ 25, 27.) Moreover, the settlement agreement says that Ellis' termination was "change[d]" to a resignation—that suggests that, at one point, Ellis was terminated. So, in Ellis' view, "resignation" was merely a label so he could get other jobs; but, if that label were peeled back, one would find a termination. Thus, while Prospect stresses that it told the unemployment agency nothing but the truth, viewing the allegations most favorably to Ellis, it was perhaps a half-truth.

That means Ellis' retaliation claims are somewhat similar to those Court's have found actionable. *See Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008) (finding viable Title VII retaliation claim premised in part on employer's false report to unemployment agency); *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1090 (10th Cir. 2007) (finding viable Title VII retaliation claim premised on employer's false report to unemployment agency that plaintiff was terminated for harassment); *Wright v. Life Start Ctrs., Inc.*, No. 00C362, 2000 U.S. Dist. LEXIS 16424, at *8–9 (N.D. Ill. Oct. 19, 2000) (finding Title VII retaliation claim viable where plaintiff claimed that her former employer had falsely told unemployment agency that "she had been discharged with cause" "which resulted, at least for some period, in the denial of benefits").

And even if Prospect's report to the unemployment agency was not as "false" as the reports in *Steele*, *Williams*, and *Wright*, the issue here is not so much whether Prospect told the unemployment agency the truth or not, but that Prospect (apparently) appealed the grant of unemployment benefits to Ellis. Absent that appeal, perhaps Ellis would have received the

10

benefits. So the better question is whether Prospect's appeal (on whatever grounds, true, false, or something in between) was motivated by retaliatory animus.

And asking that question dooms Ellis' retaliation claim—at least in its current form. Here is the would-be casual chain (as far as the Court can surmise): (1) Ellis files an EEOC charge in July 2016 (i.e., protected conduct); (2) Ellis then files for unemployment benefits in January 2017, the benefits are at first denied, but, on appeal, an ALJ finds that Ellis is not ineligible for benefits under the voluntary-leave provision; (3) sometime after April 2017, Prospect appeals the ALJ's decision, pointing out that under the settlement agreement, Ellis resigned; and (4) the Michigan Compensation Appellate Commission (or maybe a Michigan Circuit Court) finds that Ellis is barred under § 421.29(1)(a) (i.e., injury). On the current record, the Court believes this causal chain is too weak to show Prospect is liable for retaliation.

To start, Ellis' allegations do not suggest that Prospect had a strong motive to retaliate. Aside from the fact that Ellis charged Prospect with discrimination and that Prospect had to settle that charge, nothing suggests that Prospect had any reason to retaliate. For example, Ellis pleads no facts that anyone at Prospect, let alone someone involved in the unemployment proceeding, was upset that Ellis had filed the July 2016 charge. And there is a possible non-retaliatory reason for Prospect to have appealed the ALJ's decision. Under Michigan law, if an employer fails to respond to the unemployment agency's request for information about an employee's eligibility for unemployment benefits, and the failure becomes a pattern, then benefits paid to the employee "must be charged to the employer's account." *See* Mich. Comp. Laws § 421.20. The time between protected conduct and the alleged retaliatory conduct also suggests no retaliatory animus: the EEOC charge was filed in July 2016 and settled in November 2016 but Prospect did not participate in the unemployment proceeding until April 2017. And the showing of animus is weak for yet

11

another reason: Prospect's statement to the Michigan Compensation Appellate Commission was, in a sense, true. That is, it would be easier to infer animus if Prospect had submitted a wholly fabricated report to the unemployment agency. *Cf. Williams*, 497 F.3d at 1090.

In addition to a weak showing of retaliatory animus, the chain from protected conduct to injury is tenuous for a second reason. As Prospect argues, it did not deny unemployment benefits, the Unemployment Insurance Agency did.

True, an unbiased decisionmaker does not necessarily mean Prospect's retaliatory animus was not the cause of Ellis' injury. In an analogous context, courts have found that an employer can be liable where one employee harbors animus toward the plaintiff but the decision-maker harbors no animus. *See e.g.*, *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 377 (6th Cir. 2017). Liability would exist where the unbiased decisionmaker relies on information provided by the employee with animus to take an action adverse to the plaintiff. *Id.* That cat's paw situation is like Ellis' situation: Ellis claims that Prospect held retaliatory animus and supplied incorrect information upon which the Unemployment Insurance Agency relied to deny him benefits.

But the cat's paw theory at once breathes life into Ellis' theory and draws life out of it. Courts have found that where a decisionmaker without animus conducts his own investigation and reaches a decision free from the taint of the information provided by the employee with animus, the plaintiff cannot succeed against his employer—even if the decisionmaker would never have scrutinized the plaintiff's record absent the employee with animus drawing attention to the plaintiff. *See Woods v. City of Berwyn*, 803 F.3d 865, 870 (7th Cir. 2015); *see also Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 381 n.4 (6th Cir. 2017) (providing that *Woods* is an "example of an investigation sufficiently independent to 'change the subordinate's discriminatory animus from a proximate cause to a cause that is too remote to support cat's paw liability'"

(quoting *Woods*, 803 F.3d at 870)); *Poland v. Chertoff*, 494 F.3d 1174, 1181 (9th Cir. 2007) ("[I]f an adverse employment action is the consequence of an entirely independent investigation by an employer, the animus of the retaliating employee is not imputed to the employer."); *but see Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) ("We are aware of no principle in tort or agency law under which an employer's mere conduct of an independent investigation has a claim-preclusive effect. Nor do we think the independent investigation somehow relieves the employer of 'fault.'"). Analogizing to Ellis' situation, even if Prospect's appeal was the only reason the Michigan Compensation Appellate Commission revisited the ALJ's decision, if the agency was presented with all the facts—from Ellis and Prospect—and reached a fully-informed decision, then Ellis' cat's paw theory would likely fail under cases like *Woods* and *Poland*. And there is no reason to think that was not what happened. Indeed, Ellis was able to submit his termination letter to the ALJ and presumably did the same before the Commission.

In short, Ellis' proposed amended complaint shows only a weak retaliatory animus and suggests that an animus-free decisionmaker was the most proximate cause of his injury. Coupling the two points, the causal connection between Ellis' July 2016 EEOC charge and the denial of his unemployment benefits is not plausible.

## C.

Remaining then is Ellis' proposed claims against MacArthur & MacArthur.

As opposed to his two original pleadings, Ellis now focuses more on his worker's compensation case where Prospect (or its insurer) retained MacArthur & MacArthur. He alleges, "In the course of that case, MacArthur & MacArthur used intimidation and other improper tactics to deprive him of a fair opportunity to present his workers' compensation claims, and to prevent review of that case by the state appellate commission." (ECF No. 30, PageID.268.) Ellis also pleads

that MacArthur & MacArthur "caus[ed]" his attorneys to withdraw from his worker's compensation case and "coerc[ed] and threaten[ed]" him to settle that case. (ECF No. 30, PageID.271.) Ellis says this conduct violated the Fifth and Fourteenth Amendments and pursues that constitutional violation under 42 U.S.C. § 1983. Ellis also believes MacArthur & MacArthur violated 42 U.S.C. § 1985.

Ellis' § 1983 claims fail because he has not adequately pled that MacArthur & MacArthur acted "under color of state law." He believes they did because they were "licensed attorneys and officers of the Court." (ECF No. 30, PageID.271.) But being barred and practicing law does not cloak MacArthur & MacArthur with state authority. *Maben v. Terhune*, No. 16-1025, 2016 WL 9447153, at *3 (6th Cir. Aug. 19, 2016). Ellis also says that "MacArthur & MacArthur acted with the help of or in concert with state officials from the Workers' Compensation Bureau to deny Plaintiff his fundamental rights of due process." (ECF No. 30, PageID.271.) But this allegation is too conclusory to establish that MacArthur & MacArthur acted "under color of state law." *See Wellman v. PNC Bank*, 508 F. App'x 440, 442 (6th Cir. 2012). So Ellis' § 1983 claims against MacArthur & MacArthur will be dismissed. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) ("A plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct." (internal quotation marks omitted)).

Ellis' claims under § 1985 must be analyzed differently because that statute does cover private conduct. But, as MacArthur & MacArthur have argued, Ellis' allegations of wrongful conduct are vague and conclusory. Ellis does not specify how MacArthur & MacArthur intimidated him, what improper tactics they used, how they caused his attorneys to withdraw, what threats they made to cause him to settle, or how they otherwise coerced him into settling. As such,

Ellis has not pled enough factual matter for this Court to reasonably infer that MacArthur & MacArthur is liable under § 1985. *See Iqbal*, 556 U.S. at 678.

Accordingly, the Court finds that the allegations of Ellis' proposed amended complaint do not make it plausible that MacArthur & MacArthur are liable under § 1983 or § 1985.

**III.**

For the reasons given, the Court ACCEPTS the Magistrate Judge's recommendation. (ECF No. 35.)

The Court DENIES Ellis' motion for leave to amend. (ECF No. 30.)

The Court GRANTS IN PART Prospect's motion to dismiss. (ECF No. 17.) Ellis is given until May 1, 2019 to decide whether to pursue an amended claim of retaliation based on Prospect's opposition to his application for unemployment benefits. If Ellis should attempt to replead that claim, he must fully account for the analysis in this opinion and his amended complaint must be docketed by May 1, 2019. The Federal Pro Se Legal Assistance Clinic may be able to advise Ellis whether a repleading would be legally supportable. If no amended complaint is filed by May 1, Ellis' claim of retaliation based on Prospect's opposition to his application for unemployment benefits will be dismissed with prejudice. All other claims against Prospect are DISMISSED WITH PREJUDICE as of now.

The Court GRANTS MacArthur & MacArthur's motion to dismiss. (ECF No. 20.) Ellis' claims against MacArthur & MacArthur are DISMISSED WITH PREJUDICE and MacArthur & MacArthur is DISMISSED from this case.

SO ORDERED.

                                                 s/Laurie J. Michelson
                                                 LAURIE J. MICHELSON
                                                 UNITED STATES DISTRICT JUDGE

Date: March 29, 2019